**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 15 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

NAMPA CLASSICAL ACADEMY;
ISAAC MOFFETT; M. K., a minor, by
and through her next friend; MARIA
KOSMANN, individually and as next
friend of M.K., a minor,

              Plaintiffs - Appellants,

  v.

WILLIAM GOESLING, individually and
in his official capacity as Chairman of the
Idaho Public Charter School Commission
("Commission"); BRAD CORKILL;
GAYANN DEMORDAUNT; GAYLE
O'DONAHUE; ALAN REED; ESTHER
VAN WART, all individually and in their
official capacities as members of the
Commission; MICHAEL RUSH,
individually and in his official capacity as
Executive Director of the State Board of
Education; PAUL AGIDIUS, Board
Pressident; RICHARD WESTERBERG,
Board Vice President; KENNETH
EDMUNDS, Board Secretary; EMMA
ATCHLEY; ROD LEWIS; DON
SOLTMAN; MILFORD TERRELL, all
individually and in their official capacities

No. 10-35542

D.C. No. 1:09-cv-00427-EJL

MEMORANDUM[*]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

as members of the Board; TOM LUNA, individually and in his official capacities as Superintendent of Public Instruction, as Executive Secretary of the Board, and as Chief Executive Officer of the State Department of Education; LAWRENCE GARTH WASDEN, in his official capacity as the Attorney General of the State of Idaho; TAMARA BAYSINGER,

Defendants - Appellees.

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted June 7, 2011
Seattle, Washington

Before: REINHARDT, W. FLETCHER, and RAWLINSON, Circuit Judges.

Nampa Classical Academy ("NCA"), along with plaintiffs Moffett, Kosmann and M.K., sued the Idaho Public Charter School Commission, alleging that its policy prohibiting the use of sectarian or denominational texts in public schools violated the First and Fourteenth Amendments as well as Idaho state law. Sometime after the district court dismissed all of plaintiffs' claims, the state revoked NCA's charter for a lack of financial viability. We affirm the dismissal.

NCA, as a political subdivision of the state, "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." *Ysursa v. Pocatello Educ. Ass'n*, 129 S.Ct. 1093, 1101 (2009) (quoting

*Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933)).  While NCA itself is a private non-profit corporation, Idaho law contains numerous provisions that, when taken as a whole, demonstrate that Idaho charter schools are governmental entities. *See, e.g.*, Idaho Code § 33-5204(2) (charter schools "may sue or be sued . . . to the same extent and on the same conditions as a traditional public school district"); § 33-5203(1);  § 33-5204(1); 33-5208 (funding).  Idaho charter schools are also subject  to state control that weighs in favor of a finding that they are governmental entities.  *See, e.g.*, § 33-5203(2); § 33-5203(5);  § 33-5210(1).[1]  Like other political subdivisions, Idaho charter schools are creatures of Idaho state law that are funded by the state, subject to the supervision and control of the state, and exist at the state's mercy.  NCA is therefore a government entity incapable of bringing an action against the state.

The district court erred in concluding that Moffett lacked capacity to sue the state.  Because Moffet's claim that his rights as a teacher were violated by the Commission's policy is neither an official capacity claim on behalf of the school nor a non-justiciable assertion of a generalized public interest, Moffett has standing to pursue this claim.  *See Thomas v. Mundell*, 572 F.3d 756, 761 (9th Cir. 2009).

---

[1] In these respects,  Idaho law goes beyond Arizona law in characterizing charter schools as public. *Compare Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 813-14 (9th Cir. 2010).

The First Amendment's speech clause does not, however, give Idaho charter school teachers, Idaho charter school students, or the parents of Idaho charter school students a right to have primary religious texts included as part of the school curriculum. Because Idaho charter schools are governmental entities, the curriculum presented in such a school is not the speech of teachers, parents, or students, but that of the Idaho government.[2] The government's own speech is exempt from scrutiny under the First Amendment's speech clause. *See Pleasant Grove City v. Summum*, 129 S.Ct. 1125, 1131 (2009). While this court has never explicitly held that a public school's curriculum is a form of governmental speech, such a holding would necessarily follow from *Downs v. Los Angeles Unified School Dist.*, 228 F.3d 1003 (9th Cir. 2000). A public school's curriculum, no less than its bulletin boards, is "an example of the government opening up its own mouth," *id.* at 1012, because the message is communicated by employees working at institutions that are state-funded, state-authorized, and extensively state-regulated. *See Mayer v. Monroe County Community School Corp.*, 474 F.3d 477, 479-81 (7th Cir. 2007).

---

[2] The school's speech is the state's speech even if, under Idaho law, NCA is the equivalent of a school district, and school districts have broad discretion over public school curriculum. School districts enjoy broad discretion over curricula not because the school district is a crucial part of the American constitutional design with inherent rights over public school curriculum, but because states authorize the existence of school districts as political subdivisions and delegate to them the state government's authority to run state public schools. *See, e.g., Hunter v. City of Pittsburgh*, 207 U.S. 161, 178 (1907).

Because the government's own speech is not subject to the First Amendment, plaintiffs have no First Amendment right to compel that speech.

Plaintiffs allege that the state has retaliated against NCA, and not against the other plaintiffs. Because NCA is a political subdivision of the state, it has no constitutional right to sue the state itself, *see Ysursa*, 129 S.Ct. at 1101; further, a political subdivision has no constitutional protection against the actions of the state. *See Hunter*, 207 U.S. at 178 (1907).

The Commission's policy does not violate the Establishment Clause, which generally prohibits governmental promotion of religion, not governmental efforts to ensure that public entities, or private parties receiving government funds, use public money for secular purposes. *See, e.g.*, *Bowen v. Kendrick*, 487 U.S. 589 (1988).

Nor does the policy as applied violate the Equal Protection Clause of the Fourteenth Amendment, which does not apply to the state's disparate treatment of its own political subdivisions. *See Ysursa*, 129 S.Ct. at 1101**.**

The district court did not abuse its discretion in declining to exercise jurisdiction over the plaintiffs' state law claims, both because the court had dismissed all of the federal claims that formed the basis of its original jurisdiction, *see* 28 U.S.C. § 1367(c)(3), and because the remaining claims addressed novel and complex questions of state law best answered by state courts. *See id.* § 1367(c)(1).

Although plaintiffs have failed to state a claim under the First or Fourteenth Amendments, their suit is not so "frivolous, unreasonable, or groundless" that the defendants are entitled to attorneys' fees. *See Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).

**AFFIRMED**.



FILED

AUG 15 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Nampa Classical Academy v. Goesling Rights*, Case No. 10-35542
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.